## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 21-MJ-236 |
| | : | |
| LUKE RUSSELL COFFEE, | : | |
| Defendant. | : | |

## MOTION FOR EMERGENCY STAY AND
## FOR REVIEW OF RELEASE ORDER

Luke Coffee used a crutch to attack law enforcement officers as they guarded a Lower Terrace entrance to the U.S. Capitol during the insurrection on January 6, 2021.  Coffee's assault, captured on video, included charging at these United States Capitol Police and Metropolitan Police Department Officers using the crutch and, in at least one instance, using the crutch in an attempt to strike the upper chest/head area of one of the officers.  He did so as a member of the mob attacking the Capitol during its constitutional ritual of confirming the results of the 2020 Presidential Election.  This gravely serious conduct constituted an act of domestic terrorism, *see* 18 U.S.C. § 2331(5), and resulted in the government charging Coffee with multiple felonies, including a crime of violence with a dangerous weapon.  The defendant should be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(E) and (f)(2)(A).  The government respectfully requests that this Court first, stay the defendant's release pending trial, and second, review the decision by a magistrate judge from the Northern District of Texas to deny the government's motion for pre-trial detention.

## I.    BACKGROUND

### A.    Procedural Posture

On February 25, 2021, the defendant, Luke Coffee, was arrested in the Northern District

of Texas on a warrant issued by this Court in connection with a Criminal Complaint charging the defendant with violations of 18 U.S.C. §§ 111(b) (Assault of Federal Law Enforcement Officer with Dangerous Weapon), 231(a)(3) (Interference with Law Enforcement Officer During Civil Disorder), 1512(c)(2) (Obstruction of an Official Proceeding), and 1752(a)(1) and (2) (Unlawful Entry on Restricted Grounds), and 40 U.S.C. § 5104(e)(1) (Disorderly Conduct on Capitol Grounds).

At his initial appearance in the Northern District of Texas, the government made a motion to detain the defendant without bond pending trial. The defendant is subject to detention pursuant to 18 U.S.C. §§ 3142(f)(1)(E) and (f)(2)(A), which provides for detention in felony cases involving a dangerous weapon and instances in which the defendant poses a serious risk of flight.  The presiding magistrate judge set detention and preliminary hearings for March 8, 2021. At the preliminary hearing, a Special Agent with the Federal Bureau of Investigation testified for several hours.   At the conclusion of the hearing, the presiding magistrate judge found that that government had established probable cause for the offenses listed in the complaint.   The magistrate judge denied the government's detention motion and released the Defendant pursuant to certain conditions but agreed to stay the release order pending appeal.  *See United States v. Luke Coffee*, 3:21-mj-186 (N.D.T.X).

      **B.**     **Statement of Facts**

     1.  <u>Coffee's Role in the January 6, 2021 Attack on the U.S. Capitol</u>

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with

2

appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session

of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During that time, Coffee was among a group of insurrectionists attempting to gain entry to the Capitol through an entrance on the Lower Terrace. Numerous officers with the United States Capitol Police ("USCP") and Metropolitan Police Department ("MPD") guarded that entrance and sought to protect themselves as well as the Capitol building and its occupants.

As reflected on videos capturing the events, at approximately 4:28 p.m., Coffee picked up a crutch and raised it over his head, turning first to face the crowd of rioters and then turning to face the law enforcement officers at the entrance. *See* Figure 1 (screen shot from a video posted to YouTube).

Figure 1.



Coffee then lowered the crutch to waist height and proceeded to push the crutch into the line of MPD and USCP officers, making contact with at least one officer. *See* Figures 2-5 (screen

shots from police officer body cam video).

Figure 2



Figure 3.



Figure 4.



Figure 5.



In the midst of Coffee's attack, one MPD officer appears to grab Coffee in an attempt to push Coffee back.  After being forced back from the officers, Coffee charged at the officers while still holding the crutch.  This time Coffee held the crutch in a more aggressive manner, positioning

it directly towards the officer's upper chest/head area.  *See* Figures 6-8 (screen shots from police officer body cam video).

Figure 6.



Figure 7.



Figure 8.



2.   <u>Coffee's Conduct Following the January 6, 2021 Attack</u>

Coffee returned to his home state of Texas following the January 6, 2021 attack on the U.S. Capitol.   On January 11 and 14, 2021, a close family member of Coffee's sent him messages through a social media platform.   In one exchange, the family member asked, "For the Q storm does that mean you will arm yourself and war? . . . Did the Feds already talk to you?  Or rumor?" Coffee responded on January 15, "Yap to both."   In another exchange, on January 14, the family member asked, "Can you tell us where you will be thru Tuesday??"   Coffee responded the next day, "Nope can't tell you where."   On January 15, Coffee sent a message to the same close family member saying, "Don't worry.  I'm being taken care of.  I'm hidden."

In late January, Coffee granted an in-person interview to a reporter with *Texas Monthly*. In an article published after Coffee's arrest, Coffee is reported to have resided for several weeks at an undisclosed resort in Texas where he was, in the reporter's words, "hiding from the law." *See* Ex. A.

On February 25, 2021, Coffee was arrested in the Northern District of Texas and his apartment in Dallas was searched by the FBI.  Among other things, agents recovered what appears to be the same camouflage jacket Coffee was seen wearing in the videos depicting his attack.  The jacket still smelled of pepper spray.  Agents also obtained evidence that Coffee was on the verge of moving out of his apartment, including that agents observed clothes laid out around the apartment as if about to be packed.

### C.      Order for Release

After an initial appearance and hearing in the Northern District of Texas on March 8, 2021, the presiding magistrate judge issued an Order of Release for the defendant with certain conditions.  On that same day, the United States orally sought a stay of the Order pending this Motion for Review. The magistrate judge granted that request, staying the release order "pending appeal."  *See United States v. Luke Coffee*, 3:21-mj-186 (N.D.T.X).

### III.     <u>ARGUMENT</u>

Title 18, U.S.C. § 3145(a) states:

**(a) Review of a release order –** If a person is ordered released by a magistrate, …

> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .

The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised. In short, the Court may proceed as best enables it to resolve

9

the question posed:  whether any condition or combination of conditions will reasonably assure

the appearance of the person as required and the safety of any other person and the community.

As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad.

News 3182,  3195-3196.[1]

---

[1] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

10

The defendant is subject to detention pursuant to 18 U.S.C. § 3142(f)(1)(E) and (f)(2)(A) because he is charged with a felony involving a dangerous weapon and poses a serious risk of flight.   Consequently, the government requests review of the magistrate judge's decision to release the defendant and seeks a further stay of the order from this Court.

Respectfully submitted,

CHANNING PHILLIPS
ACTING UNITED STATES ATTORNEY

By: _____/s/_____
      Peter Lallas
      Assistant United States Attorney
      N.Y. Bar Number 4290623
      United States Attorney's Office
      555 Fourth Street, N.W.
      Washington, D.C.  20530
      Telephone: (202) 252-6879
      Email: peter.lallas@usdoj.gov