THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 21-MJ-236 |
| | : | |
| LUKE RUSSELL COFFEE, | : | |
| Defendant. | : | |

### REPLY TO THE GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

TO THE HONORABLE JUDGE BERYL HOWELL: NOW COMES Defendant Luke Coffee, through his attorney Jim Burnham, and respectfully files this Reply To The Government's Supplemental Memorandum In Support Of Pre-Trial Detention, submits the following:

*I.*

The Government failed to justify Luke Coffee's detention on the basis of dangerousness, the government must prove by "clear and convincing evidence" that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142.

(3) determined the district court did not demonstrate that it 'adequately considered, in light of all the record evidence,' whether defendants, who were a part of the mob assault on the Capitol, illegally entered the Capitol, carried weapons onto Capitol grounds, and showed no remorse for their actions, but had limited criminal history, . . . presented 'an identified and articulable threat to the community,'" Minute Order (citing *Munchel*, 2021 WL 1149196, at *7-8).

Government failed to adequately demonstrate, in light of all record evidence, whether Luke Coffee presents an identified and articulable threat to the community.

The Government failed to prove that Luke Coffee by clear and convincing evidence that Luke Coffee presents an identified and articulable threat to an individual and the community. Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual and the community.

Further, Luke Coffee argues that the Government's proffer of dangerousness should be weighed against the fact that the government did not seek detention of defendants who admitted they pushed through the police barricades and defendants charged with punching officers, breaking windows, discharging tasers at officers, and with planning and fundraising for the riot. See Munchel Reply Mem. At 9-12.

Further, the Government failed to prove by clear and convincing evidence that the determination of a threat has been made individually based on the evidence which is before the court regarding Luke Coffee.

Further, the Government failed to prove by clear and convincing evidence that the threat posed by Luke Coffee to an individual or the community that presents a demonstrable danger to the community.

Further, the Government failed to prove by clear and convincing evidence that the Court is unable to disable Luke Coffee from executing the alleged threat posed by Luke Coffee to an individual or the community.

Further, the Government failed to explain how it reached the conclusion, that any violence committed by Luke Coffee on January 6, either poses an alleged threat of "using force to promote his political ends" or poses a threat of committing violence in the future.

Further, the Government failed to prove by clear and convincing evidence that Luke Coffee was in a different class of dangerousness from Munchel because the FBI videos show that Luke Coffee qualified for the Munchel class or his own separate class as being one of four non-violent peacemakers that broke up the violent confrontations between the Capitol Police and the violent attackers of the Capitol Police at the entrance of the Lower Terrace Tunnel entrance.

Further, the Government failed to prove by clear and convincing evidence that the future misconduct that is anticipated of Luke Coffee concerns "violent criminal activity" as defined in U.S. V. Simpkins, 826 F.2d at 96 in a proper dangerousness determination to justify detention.

Further, the Government failed to prove by clear and convincing evidence that on January 6, that Luke Coffee had any interest to storm the Capitol or to being part of the violent attackers or to threaten the peaceful transfer of power or to obstruct the electoral college vote.

> (4) required that any 'threat be considered in context,' . . . such that the district court must consider 'the nature of the threat identified and the resources and capabilities of the defendant' to carry out that threat," Minute Order (citing *Munchel*, 2021 WL 1149196, at *7-8).

> (6) directed the district court to consider whether defendants pose such a threat outside of the specific context 'of a large group of people who had gathered at the Capitol in protest that day' on January 6th, 2021, since 'the presence of the group was critical to their ability to obstruct the vote and to cause danger to the community,' . . . and 'there was no explanation of how [defendants] would be capable of doing so now that the specific circumstances of January 6 have passed,'" Minute Order (citing *Munchel*, 2021 WL 1149196, at *8).

The Government's assertions that Luke Coffee poses an ongoing threat to the community fail as unsupported speculations and misinterpretations. Luke Coffee did not use a dangerous weapon on Capitol grounds. Luke Coffee had no connection with the violent attackers and pleaded

that they "STOP" 4 times and "PRAY" 9 times. The "law enforcement officer who was brutally beaten and tased by assailants" was dragged into the crowd long before Luke Coffee went forward to break up the insurrection. Luke Coffee is in a separate class from the violent attackers in the FBI videos.

The Government argues the crutch is a dangerous weapon. Under the relevant statute, 40 U.S.C. § 5104 (a)(2)(A) (See Exhibit A), does not state the crutch is a dangerous weapon.

Luke Coffee never used the crutch as a "dangerous weapon." 18U.S.C. § 111(b), refer to ECF, Document 13, pages 20-22.

## II.

**Luke Coffee's actions on January 6, 2021 or the weeks following, and the testimonies from the March 8, 2021 detention hearing and the pretrial services report all demonstrate that Luke Coffee is not a danger to the community and any person (pages 1-3).**

a. On January 6, 2021 Luke Coffee acted as a peacemaker and urged the rioters to "Stop" and "Pray."
   - The clip of the discovery video from Social Media [1 hour, 14 minutes, 16 seconds mark to 40 seconds mark] shows Luke saying stop and pray and it is audible.
   - FBI Special Agent Hillman testified that Luke Coffee was saying stop and pray multiple times:

     **Burnham:** Okay. We're going to play it again. Now, Officer, did Luke Coffee in that video yell to the crowd, Stop, stop, stop, stop, four times?
     **Hillman:** Yes, sir, that's what it sounded like he was saying.
     **Burnham:** Okay. Did he say, Pray -- stop -- pray, pray, pray, pray, pray, pray, pray, pray, pray –nine times?
     **Hillman:** I don't know how many times it was, but it was multiple times is what it sounded like, yes, sir.[1]

   - Special Agent Hillman testified that when he spoke to Luke Coffee on January 13, 2021, he told Luke Coffee that it looked like he was "trying to help stop it all."[2]

b. Luke Coffee's is not a member of any radicalized organizations such as Proud Boys, VSC-131, the Three Percenters, and others.

c. Luke Coffee's comments on Conspiracy Castle were merely bravado and two of the Conspiracy Castle interviews occurred after Luke Coffee was in contact with Special Agent Mike Hillman on January 13, 2021 and had been told that he was not a suspect.
   - The Government is misconstruing the statements in the Conspiracy Castle videos with Luke Coffee.

---

[1] Transcript of March 8, 2021 Detention Hearing, Page 82. Lines 4-19
[2] Transcript of March 8, 2021 Detention Hearing, Page 82. Lines 4-19.

Page **3** of **8**

- The "nature and seriousness" of Coffee statements in the interviews are bravado, exaggerated, and for entertainment.
- The intent of "Conspiracy Castle," as stated in the video admitted as Government Exhibit 7, is for "entertainment purposes only."

d. Luke Coffee does not own a firearm and has not attempted to purchase one.
   - The Magistrate Court summarized Luke Coffee's actions and intent thus:
     - "There is no evidence that Mr. Coffee has, in fact, obtained a firearm or attempted to do so or has any real or specific plans to engage in any further confrontations with law enforcement…in actuality, Mr. Coffee hired a lawyer and turned himself in and gave consent to search his vehicle."[3]

e. History and Characteristics of Luke Coffee.
   - Luke Coffee has no prior criminal history
   - Pretrial Services stated,
     - "…defendant stated he has daily contact with both of his parents who reside in Tool, Texas. The defendant reported bi-weekly contact with his brothers, Ben Coffee and Nate Coffee, who both reside in Dallas, Texas. The defendant related he has weekly contact with his sister, Helen Coffee, who resides in Marble Falls, Texas…The defendant's personal history and familial ties were verified by the defendant's mother, Marybeth Coffee, via telephone."[4]
   - Since 2009 Luke Coffee has been the owner of Coffee Productions Inc. based in Dallas.[5]
   - Six (6) witnesses testified and nine (9) proffered witnesses that Luke Coffee poses no flight risk or threat to the community and any person.

     - Helen Coffee, sister of Luke Coffee.[6]
     - Herb Thomas, lifelong friend of Luke Coffee and owner of a Dallas Law Firm.[7]
     - Lindsey Collins, lifelong friend of Luke Coffee.[8]
     - Andrew Prine, friend of Luke Coffee for 22 years.[9]
     - Travis Barnes, friend of Luke Coffee for 24 years.[10]
     - Russell Coffee, Jr., father of Luke Coffee.[11]

---

[3] Transcript of March 8, 2021 Detention Hearing, Page 169
[4] Pretrial Services Report of March 5, 2021, Page 2
[5] Pretrial Services Report of March 5, 2021, Page 3
[6] Transcript of March 8, 2021 Detention Hearing, Page 108 Line 22-25 and Page 109 Lines 1-5
[7] Transcript of March 8, 2021 Detention Hearing, Page 119 Lines 20-24
[8] Transcript of March 8, 2021 Detention Hearing, Page 131 Lines 21-25 and Page 132 Lines 3-6
[9] Transcript of March 8, 2021 Detention Hearing, Page 135 Line 16-20
[10] Transcript of March 8, 2021 Detention Hearing, Page 141 Line 7-15
[11] Transcript of March 8, 2021 Detention Hearing, Page 144 Line 7-12

### III.

**Luke Coffee's actions on January 6, 2021 or the weeks following, the testimonies from the March 8th detention hearing and the pretrial services report all demonstrate that Luke Coffee is not a flight risk (pages 3-6):**

a. Luke Coffee fully cooperated with authorities at every stage of this investigation.
   - Special Agent Michael Hillman contacted Luke Coffee on January 13, 2021 and Luke Coffee voluntarily returned Special Agent Hillman's call that same day and openly discussed the events of January 6, 2021.[12]
   - Special Agent Hillman stated that Luke Coffee, "did not appear to be trying to hide where he lived." [13]
   - Special Agent Hillman testified that over the next two weeks Luke Coffee voluntarily communicated with Special Agent Hillman "at least another dozen times" [14] before Luke Coffee's attorney contacted Hillman.

b. Jim Burnham spoke with Special Agent Hillman at least seven (7) times in February 2021:
   (1) February 2, 2021
   - Special Agent Hillman testified, that on February 2, 2021, he spoke to Jim Burnham and told him that he believed the offense was a Federal misdemeanor.[15]

   (2) February 3, 2021
   - Special Agent Hillman testified, that Jim Burnham spoke to him on February 3, 2021 and he told Jim Burnham that a charge decision had not been made.[16]

   (3) February 9, 2021
   - Special Agent Hillman testified, that Jim Burnham spoke to him on February 9, 2021 and that he told Jim Burnham that he had not seen any violent posts by Luke Coffee.[17]

   (4) February 24, 2021 approximately at 9:15 AM
   - Special Agent Hillman testified, that he spoke with Jim Burnham again on February 24, 2021 when he asked if Luke Coffee's number changed.[18]

   (5) February 24, 2021 at 12:30 PM

---

[12] Transcript of March 8, 2021 Detention Hearing, Page 52 Lines 4-12
[13] Transcript of March 8, 2021 Detention Hearing, Page 54. Lines 22-25 and Page 55 Lines 1-11
[14] Transcript of March 8, 2021 Detention Hearing, Page 64 Lines 19-23
[15] Transcript of March 8, 2021 Detention Hearing, Page 67 Line 5
[16] Transcript of March 8, 2021 Detention Hearing, Page 68 Lines 7-9
[17] Transcript of March 8, 2021 Detention Hearing, Page 68 Lines 17-23
[18] Transcript of March 8, 2021 Detention Hearing, Page 68 Lines 24-25 Page 69 Lines 1-6

- Special Agent Hillman testified, that he spoke with Jim Burnham on February 24, 2021 at 12:30 PM and Jim Burnham informed him that Luke Coffee's cell phone number had not changed.[19]

(6) February 24, 2021 @3:30 PM
- Special Agent Hillman testified, that he spoke with Jim Burnham on February 24, 2021 at 3:30 PM and that Jim Burnham notified him Luke Coffee's was moving to Tool, Texas, to stay with his parents.[20]

(7) February 24, 2021 @5:00 PM
- Special Agent Hillman testified, that he spoke with Jim Burnham on February 24, 2021 at 5:00 PM and that he told Jim Burnham that Luke Coffee needed to turn himself in the next day, Friday, February 25th at 9:00 AM at the Federal Court House.[21]

c. Pretrial Services recommended pre-trial release for Luke Coffee and established that he had many ties to the community.
- "…defendant stated he has daily contact with both of his parents who reside in Tool, Texas. The defendant reported bi-weekly contact with his brothers, Ben Coffee and Nate Coffee, who both reside in Dallas, Texas. The defendant related he has weekly contact with his sister, Helen Coffee, who resides in Marble Falls, Texas…The defendant's personal history and familial ties were verified by the defendant's mother, Marybeth Coffee, via telephone."[22]
- "To reasonably assure the defendant's appearance and the safety of the community, Pretrial Services respectfully recommends the defendant be released on a Personal Recognizance bond and with the following conditions…" [23] (The Pretrial Service report goes on to list 7 conditions none of which include GPS monitoring which is added by the Magistrate Judge.)
- For the last 13 years, Luke Coffee has been the owner of Coffee Productions Inc. based in Dallas, TX.[24]

d. Luke Coffee voluntarily turned himself in on February 25, 2021, at 9:00 am as scheduled.
- Special Agent Hillman testified, that Luke Coffee voluntarily gave him consent to search his vehicle. [25]
- Luke Coffee also voluntarily told Special Agent Hillman where his car keys and backpack were.

---

[19] Transcript of March 8, 2021 Detention Hearing, Page 69 Lines 7-14
[20] Transcript of March 8, 2021 Detention Hearing, Page 70 Lines 8-21
[21] Transcript of March 8, 2021 Detention Hearing, Page 71 Lines 8-13
[22] Pretrial Services Report of March 5, 2021, Page 2
[23] Pretrial Services Report of March 5, 2021, Page 5
[24] Pretrial Services Report of March 5, 2021, Page 3
[25] Transcript of March 8, 2021 Detention Hearing, Page 72 Lines 20-25 and Page 73 Lines 1-14

e. Special Agent Hillman did not consider Luke Coffee a flight risk on February 25, 2021, the day after he turned himself in.
   - At the detention hearing, Special Agent Hillman testified that the day after Luke Coffee turned himself in voluntarily, he told Luke Coffee's attorney over the phone on February 25, 2021, that Luke Coffee was not considered a flight risk "so far." [26]

f. Six (6) witnesses testified and nine (9) proffered witnesses that Luke Coffee poses no flight risk or threat to the community and any person:
   - Helen Coffee, sister of Luke Coffee.[27]
   - Herb Thomas, lifelong friend of Luke Coffee and owner of a Dallas Law Firm.[28]
   - Lindsey Collins, lifelong friend of Luke Coffee.[29]
   - Andrew Prine, friend of Luke Coffee for 22 years.[30]
   - Travis Barnes, friend of Luke Coffee for 24 years. [31]
   - Russell Coffee, Jr., father of Luke Coffee. [32]

g. Release to a third-party custodianship of is an extra assurance of compliance with release conditions and his father is an appropriate third-party custodian.

h. Electronic monitoring will further minimize Luke Coffee's already minimal flight risk. The Magistrate Judge in Dallas ordered that Luke Coffee "be subject to stand-alone monitoring" in the form of a "GPS system tracking to monitor and enforce his position."[33]

## IV.
## Conclusion

Such conditions as those ordered by the Magistrate Judge are more than sufficient to reasonably assure Luke Coffee's future appearances before this Court and the safety of all persons and the community under the heightened standards of the Bail Reform Act.

Respectfully submitted,

**/s/ Jim Burnham**

Jim Burnham

State Bar No. 0344100

6116 N. Central Expwy., Ste. 515

---

[26] Transcript of March 8, 2021 Detention Hearing, Page 73-74 Lines 24-25 and Lines 1-3
[27] Transcript of March 8, 2021 Detention Hearing, Page 108 Line 9
[28] Transcript of March 8, 2021 Detention Hearing, Page 121 Lines 23-25 and Page 122 Lines 1-3
[29] Transcript of March 8, 2021 Detention Hearing, Page 132 Lines 23-25 and Page 132 Lines 1-3
[30] Transcript of March 8, 2021 Detention Hearing, Page 135 Line 10-13
[31] Transcript of March 8, 2021 Detention Hearing, Page 141 Line 7-15
[32] Transcript of March 8, 2021 Detention Hearing, Page 143 Lines 1-10 and Lines 15-23
[33] Transcript of March 8, 2021 Detention Hearing, Page 174 Line 4

Dallas, Texas 75206<br>
Telephone (214) 750-6616<br>
Facsimile (214) 750-6649<br>
Email:<br>
Jim@Jburnhamlaw.com

## CERTIFICATE OF SERVICE

I, Jim Burnham, hereby certify that on April 7, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Peter Lallas
Assistant United States Attorney
N.Y. Bar Number 4290623
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-6879
Email: peter.lallas@usdoj.gov

/s/ Jim Burnham<br>
<b>JIM BURNHAM</b>